UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID KITCHENS, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:05-cv-195 (JCH) |
| | : | |
| UNITED STATES POSTAL SERVICE, | : | |
| JOHN POTTER, POSTMASTER GENERAL, | : | April 18, 2007 |
| DANIEL DEJESUS, and MARK PARKS, | : | |
|     Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 20]**

The plaintiff, David Kitchens, brings this action against the United States Postal Service, John Potter, Postmaster General, Daniel DeJesus, and Mark Parks (the "defendants"). In his Complaint [Doc. No. 1], Kitchens alleges race-based discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., and a denial of due process under the Fourteenth Amendment, in violation of section 1983 of Title 42 of the United States Code.

The defendants have filed a Motion for Summary Judgment [Doc. No. 20] pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**I.    STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts

1

showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II.  FACTS[1]

Kitchens is an African-American male who began working as a part-time flexible carrier with the United States Postal Service ("USPS") in Bloomfield, CT, in October 1997. See Def.'s Loc.R.Civ.P. 56(a)1 Statement ("Def.'s Stat.") at ¶ 1 [Doc. No. 22]. Kitchens was issued a Letter of Warning on October 16, 2002, which charged him with violating USPS standards of conduct regulations and Connecticut District's "zero tolerance" policy during a verbal altercation with a fellow employee. Id. at ¶ 2.  Kitchens had apparently left the postal facility without reporting the incident, but reported the incident to the Bloomfield Police Department. Id. at ¶¶ 3-4.

---

[1]For the purposes of the instant motion, the court accepts as true facts undisputed by the parties and resolves disputed facts in favor of Kitchens where he provides evidence to support his allegations.

On December 12, 2002, Kitchens received a Notice of Suspension of no more than 14 days for allegedly failing to follow instructions in violation of USPS standards of conduct. Id. at ¶ 7. On February 24, 2003, Kitchens received another such Notice of Suspension based on another alleged failure to follow instructions. Id. at ¶ 9.

On March 20, 2003, Kitchens received a third such Notice of Suspension based on charges of failing to immediately report an injury and failing to follow instructions. Id. at ¶ 13. Kitchens had informed Postal Supervisor DeJesus on Monday, March 3, 2003, of an injury that had occurred on the job on March 1, 2003. Id. at ¶ 14.

Kitchens was placed on an emergency suspension on April 10, 2003. On April 23, 2003, Kitchens received a Notice of Removal from DeJesus for violation of USPS standards of conduct and the "zero tolerance" policy, which relates to zero tolerance of acts or threats of violence of any kind, based on alleged conduct that occurred on April 10, 2003. Id. at ¶¶ 6, 21. Kitchens filed grievances regarding these charges of misconduct, which were resolved by a pre-arbitration agreement between the National Association of Letter Carriers and the USPS that rescinded the April 10 emergency suspension and reduced two suspensions and the removal to one 14-day suspension. Id. at ¶ 25; Ex. H.

On November 13, 2003, Kitchens was questioned regarding his use of unauthorized overtime on November 10 and 12. Id. at ¶ 26. An incident on December 9, 2003, resulted in DeJesus revoking Kitchens' driving privileges of USPS vehicles. Id. at Ex. J. According to the defendants, DeJesus personally saw Kitchens leave his

postal vehicle with the vehicle running while he was delivering mail on his route.[2]  Id. at ¶ 27.  USPS's "Zero Deviation Policy" sets forth a six-step dismount procedure that includes turning off the ignition and taking out the key to prevent accidents; failure to follow the policy may give rise to employee discipline, including termination.  Id. at ¶¶ 28-29.  Kitchens was aware of this dismount policy.  Id. at ¶¶ 30, 32.  On December 19, 2003, Kitchens received a Notice of Removal based on the alleged dismount violation and charges of unsatisfactory work performance, citing to the 14-day suspension dated April 23, 2003, for conduct violations.  Id. at ¶¶ 36, 38.  Kitchens was removed from employment with USPS effective December 19, 2003.  Id. at ¶ 39.

On January 12, 2004, Kitchens contacted an EEO Counselor, and on March 2, 2004, he filed an EEO Complaint alleging race-based discrimination and retaliation. Id. at ¶¶ 40-41.  The USPS EEO Investigator subsequently issued a "Partial Acceptance - Dismissal of Complaint," rejecting all but two of Kitchens' claims as untimely.  Id. at ¶ 42.  On November 3, 2004, the USPS EEO Manager of Compliance and Appeals issued a Notice of Final Decision, which made a finding of no discrimination on both of Kitchens' claims.  Id. at ¶ 43.

## III. DISCUSSION

### A. Title VII Claims (Count I)

#### 1. Claims Against USPS, Daniel DeJesus, and Mark Parks

In his Memorandum in Opposition to Summary Judgment ("Mem. in Opp."), at 7

---

[2]Kitchens denies this statement, asserting that DeJesus did not observe him leaving his vehicle running while delivering mail; instead, he left the vehicle running while making a curbside delivery that did not require a dismount.  See Plf.'s Loc.R.Civ.P. 56(a)2 Statement ("Plf.'s Stat.") at ¶ 27 [Doc. No. 31].

4

[Doc. No. 29], Kitchens conceded that the claims against Daniel DeJesus and Mark Parks should be dismissed for lack of subject-matter jurisdiction. Therefore, the claims against DeJesus and Parks are dismissed.

The court finds that the claims against the USPS should also be dismissed. Pursuant to 42 U.S.C.A. § 2000e-16, "the head of the department, agency, or unit, as appropriate, shall be the defendant" in an employment discrimination action brought by a federal employee. Since "[t]he agency itself or its lower level federal employees are not appropriate defendants," Mitchell v. Chao, 358 F. Supp. 2d 106, 112 (N.D.N.Y. 2005), "the proper defendant in a Title VII case brought by a USPS employee is the Postmaster General," Mathirampuzha v. Potter, 371 F. Supp. 2d 159, 163 (D. Conn. 2005) (citing cases). Thus, Kitchens' claims against the USPS will be dismissed, leaving only Postmaster General John Potter as a defendant. See Mathirampuzha, 371 F. Supp. 2d at 163.

### 2. Exhaustion of Administrative Remedies

The defendants argue that Kitchens' claims in paragraphs 19 through 22 and 27 of his Complaint must be dismissed for failure to exhaust administrative remedies. See Def.'s Memorandum in Support of Summary Judgment ("Mem. in Supp.") at 11 [Doc. No. 21]. These claims relate to two notices of suspension, a letter of warning, and a notice of removal issued on February 24, 2003, March 20, 2003, March 8, 2003, and April 23, 2003, respectively. See id.

"'Title VII imposes an exhaustion requirement that allows federal courts to exercise jurisdiction over a plaintiff's Title VII claims only when the plaintiff has previously presented the claims in [his or] her [administrative] complaint.'"

Mathirampuzha v. U.S. Postal Service, 2006 WL 2458669, at *4 (D. Conn. 2006) (citations omitted). A federal employee who believes he has been discriminated against must bring a complaint to his agency's EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." See 29 C.F.R. § 1614.105(a)(1).[3]

The Second Circuit has held that "[t]he requirement that a claim be first raised with the EEO office . . . is not a jurisdictional one," but is subject to the equitable doctrines of waiver, estoppel, and tolling. Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir. 2003). Further, the court has treated this requirement as "analogous to the requirement that a private sector employee first bring a complaint to the attention of the Equal Employment Opportunity Commission ("EEOC") for resolution." Id. In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), the Supreme Court held that a Title VII claim based on a "discrete act" must be filed with the EEOC within 300 days after the discrete discriminatory act occurred, or otherwise it would be time barred. Nevertheless, "[t]he existence of past acts . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Id.; see also Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004).

There is no dispute that Kitchens first contacted an EEO Counselor on January 12, 2004. The defendants claim that all conduct occurring before November 28, 2003,

---

[3]Within 30 days of such a complaint, the EEO counselor must conduct the final interview and, if the matter has not been resolved, must notify the aggrieved employee of his rights. Id. at § 1614.105(d); see also Mathirampuzha, 2006 WL 2458669, at *4.

6

that is, more than 45 days prior to January 12, 2004, is time barred. See Def.'s Mem. in Supp. at 12. Kitchens claims that in his January 12th complaint to the EEO Counselor he grieved his December 19, 2003 Notice of Removal, which referenced earlier charges of conduct violations. See Def.'s Stat. at Ex. N, Notice of Removal. Kitchens also claims that his complaint to the EEO Counselor regarding the fact that he was prevented from working the 2003 Thanksgiving holiday shift despite having been pre-authorized to work this shift is within the 45-day period, and is thus not time barred. See Plf.'s Mem. in Opp. at 10.

The court finds no merit in Kitchens' assertion that, because the defendants referenced earlier charges of misconduct (resulting in a suspension) in their December 19 Notice of Removal, his claim that the resulting 14-day suspension was based on discrimination should not be time barred. Kitchens has pointed to no authority which would support his contention that Morgan does not apply to time-barred claims that are incorporated by reference in a later timely filed claim. Further, it is unclear to the court that with the December 19 Notice of Removal, the defendants "brought in earlier charges of conduct which were again grieved to the EEO Counselor on January 12, 2004," see Plf.'s Mem. in Opp. at 9, because the Notice only referred to the earlier suspension in one sentence: "A review of your disciplinary record reveals the following: You were issued a Fourteen Day Suspension dated April 23, 2003, for conduct violations." See Def.'s Stat. at Ex. N. Just because this information was contained in the December 19 Notice does not mean that the earlier charge of misconduct leading to a suspension is not itself time barred. Nevertheless, although this suspension cannot itself form a basis for a finding of discrimination, Kitchens correctly notes that the

7

"time-barred conduct may still be offered as evidence of discriminatory intent to support timely claims." Nakis v. Potter, 422 F. Supp. 2d 398, 410 (S.D.N.Y. 2006) (citing Morgan, 536 U.S. at 102).

With respect to Kitchens' Thanksgiving holiday schedule claim, although the court construes "Thanksgiving holiday" to mean the Friday after Thanksgiving, which was November 28, 2003, since the Post Office is generally closed on Thanksgiving day, Kitchens' EEO Complaint indicated that he was informed on November 25 that he would not be working during the Thanksgiving holiday. See Def.'s Stat. at Ex. P. Since November 25, 2003, falls outside of the 45-day period, this claim is also time barred. See Giordano v. Potter, 2004 WL 45526, at *1 (N.D.N.Y. 2004) (holding that 45-day time limit begins to run on the "'date of the alleged discriminatory event, or [on] the date that [employee] knew or should have known of the discriminatory event.' . . . . [that is], an employment discrimination claim accrues on the date that the employee 'knows or has reason to know of the injury which is the basis of his action'") (citations omitted). Thus, the only discrete acts that are timely are those that were also accepted for investigation by the USPS EEO Investigator, that is, Kitchens' claims of discrimination based on being denied to begin tours at earlier times, most recently on December 15, 2003, and based on the December 19 Notice of Removal charging Kitchens with violating the USPS dismount policy.

      3.     Disparate Treatment Claims

Analyzing whether the defendants subjected Kitchens to disparate treatment must be done under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Fitzgerald v. Henderson, 251 F.3d 345, 356 (2d Cir.

8

2001). The plaintiff is first required to establish a prima facie case of discrimination. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed his job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. Burdine, 450 U.S. at 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for their actions. See id. Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendants intentionally discriminated against him in the employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendants was not the employer's true reason, but was a pretext for discrimination. Id.

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. Schnabel v. Abramson, 232 F.3d 83, 89-91 (2d Cir. 2000) (citing Reeves, 530 U.S. at 148). The court must "examin[e] the entire record

to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143). The plaintiff need not show that race was the only factor motivating any adverse employment actions he suffered in order to make a showing of employment discrimination. See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive. Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

      The defendants first argue that Kitchens has failed to make out a prima facie case of discrimination because he cannot establish that he suffered adverse employment actions because of his race, the fourth element of the disparate treatment test. To show that the adverse actions he endured at the USPS took place under conditions giving rise to an inference of discrimination, Kitchens may demonstrate that the defendants "treated him less favorably than a similarly situated employee outside his protected group." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). Kitchens must specifically show himself to be "similarly situated in all material respects" to the individuals with whom he compares herself. Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997). The test for materiality asks whether Kitchens and the individuals against whom he compares himself were subjected to the same workplace standards and whether the conduct at issue was of comparable severity.

Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999)).

With regard to Kitchens' claim of not being allowed to have earlier start times at work, the defendants argue that Kitchens has not established that this refusal was given under circumstances that give rise to an inference of discrimination, and that even if it were, the defendants have articulated legitimate non-discriminatory reasons for denying him earlier start times which Kitchens has not countered with evidence of pretext. Kitchens compares himself to several employees who he claims began earlier start tours, although Kitchens has no evidence that these individuals requested earlier start times. See Def.'s Stat. at Ex. M, Kitchens Dep. at 114, 116. According to Kitchens, while he had been denied an earlier start time on December 15, 2003, during three days in late December, after Kitchens' dismissal, employees of other races who were assigned to his route were given earlier start times.[4] See Plf.'s Stat. of Disputed Facts at ¶ 3. The defendants agree that on December 27, 29, and 30, 2003, the delivery of Route 4 began earlier,[5] see Def.'s Stat. at Ex. V; however, it asserts that "the mere fact that Route 4 was delivered earlier on three consecutive days is probative of nothing," see Def.'s Mem. in Opp. at 4.

The defendants assert, and Kitchens agrees, that DeJesus, who was responsible

---

[4] Because the plaintiff's burden of proof on the prima facie case is de minimus, see Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 92 (2d Cir. 1996), for purposes of this motion, the court will assume that the two individuals who delivered Kitchens' Route 4 following Kitchens' dismissal, Patrick Carbray (white) and Eric Nieves (Hispanic), are similarly situated to Kitchens, and that he has established his prima facie case.

[5] In the month of December 2003, Kitchens began Route 4 most of the time at 7:50 a.m., although on December 16 he began at 7:00 a.m. On December 27, Carbray began Route 4 at 6:68 (sic) a.m.; on December 29, Nieves began Route 4 at 6:92 (sic) a.m.; and on December 30, Nieves began Route 4 at 6:49 a.m. See Def.'s Stat. at Ex. V.

11

for scheduling start times, told Kitchens that he could not start earlier on December 15, 2003, because he had been given four hours annual leave on that day, and employees were not given earlier start times on days when they had a scheduled annual leave. See Def.'s Stat. at ¶ 50; Ex. M, Kitchens Dep. at 119-20; Ex. T.  Moreover, because start times of mail routes are established on a day-to-day basis, depending on "operational needs," they may vary depending on such factors as mail volume, staffing issues, or day of the week, including if it was the day after a holiday.  See Def.'s Stat. at Ex. T & U.  The three days in question fell in between the Christmas and New Year's holidays, and very soon after Kitchens was dismissed.  Thus, the court finds that the defendants have produced evidence of a legitimate business reason for their start time scheduling policy, and Kitchens has not come forward with evidence that would permit the trier of fact to draw a reasonable inference of pretext.

Indeed, Kitchens argues in only two sentences that the defendants have not offered a legitimate non-discriminatory reason for their refusal of earlier start times, asserting only that DeJesus was responsible for scheduling and after Kitchens' dismissal other employees were permitted earlier start times on Kitchens' route. However, Kitchens has offered no evidence suggesting that these other employees requested, and were granted, earlier start times, or that USPS departed from its general scheduling policies when it denied him earlier start times, or that USPS's evidence that start times varied depending on factors such as if it was around a holiday, was a pretext for discriminating against Kitchens.  "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."  Meiri v. Dacon, 759

F.2d 989, 998 (2d Cir. 1985). Thus, the court grants summary judgment to the defendants on this claim.

The other adverse employment action Kitchens asserts is that he was removed from employment in December 2003 based on a "false accusation" of violating the USPS dismount policy. See Plf.'s Mem. in Opp. at 12. Kitchens claims that DeJesus never observed him deliver mail with the vehicle still running; instead, he claims that he was performing a curbside delivery at the time DeJesus observed the vehicle, and that the dismount policy does not apply to curbside deliveries when employees do not dismount the vehicle. See Plf.'s Ex. G, Kitchens Aff. at ¶ 17 [Doc. No. 31]. Kitchens agrees that a violation of the dismount policy could lead to discipline, up to and including termination. See Def.'s Stat. at ¶ 32.

Kitchens has not come forward with evidence of similarly situated employees who were not terminated for violating the dismount policy; however, it appears that under DeJesus' supervision, no employee in Kitchens' position violated the dismount policy. See Def.'s Stat. at ¶ 57. Nevertheless, the court finds that Kitchens has provided sufficient evidence to satisfy the de minimis burden of his prima facie case, since there is an issue of fact as to whether DeJesus actually observed Kitchens violating the dismount policy, the principal basis for Kitchens' removal. The defendants' reference their dismount policy, which states that "[j]ust being observed violating these procedures is sufficient to warrant disciplinary action, up to and including removal from the Postal Services." See Def.'s Stat. at Ex. K. However, even if the defendants' dismount policy is a reason for Kitchens' removal, there still remains an issue of fact regarding whether DeJesus actually observed Kitchens violating this dismount policy, or

13

whether DeJesus' falsely stated that he did because of Kitchens' race.  In essence, Kitchens has established a prima facie case combined with a showing that the defendants' stated reason for his termination is false, which may permit the trier of fact to infer unlawful discrimination.  See Schnabel, 232 F.3d at 89-90 (citing Reeves, 530 U.S. at 148).

Kitchens testified in his deposition that DeJesus falsely accused him of violating the dismount policy because "Danny is Puerto Rican.  Danny did not like me at all.  Just from previous disciplinary things, he did not like me."  See Def.'s Stat. at Ex. M, Kitchens Dep. at 108.  Kitchens has pointed to a number of incidents, some of which resulted in Notices of Suspension, in which he claims he received a harsher discipline than employees of other races, although the court notes that the only ones that would be relevant to his Title VII claim are those that involved DeJesus.  See Plf.'s Stat. of Disputed Facts at ¶¶ C-K.  While the court is doubtful that these prior incidents were based on discriminatory intent, it finds that in combination with the disputed facts surrounding Kitchens' termination, Kitchens has created an issue of fact precluding summary judgment on this claim.  Indeed, in a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the court finds that because, "as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 39, 37 (2d Cir. 1994).

Although the evidence provided by Kitchens on this claim is "thin," there is enough to warrant a trial on the underlying issue of whether the defendants discriminated against him because of his race.  See Hill v. Taconic Developmental Disabilities Servs. Office, 283 F. Supp. 2d 955, 962 (S.D.N.Y. 2003).

    **B.**    **Section 1983 Claim** (Count Two)

Kitchens failed to address his claim that the defendants violated his due process rights under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, in his Memorandum in Opposition to Summary Judgment.  Based on the sound argument and record presented by the defendants on this claim, the motion for summary judgment is granted absent objection.

    **C.**    **Punitive Damages**

Kitchens does not address the defendants' argument that he is not entitled to punitive damages against the Postmaster General because, "[t]he USPS is a 'government agency' for purposes of the statute exempting government agencies from punitive damages in Title VII actions." Mathirampuzha v. Potter, 371 F. Supp. 2d 159, 163 (D. Conn. 2005); see also Boenig v. Potter, 2005 WL 736822, at *7 (D. Conn. 2005).  Based on the sound argument and record presented by the defendants on this claim, the motion for summary judgment is granted absent objection.

**IV.**    **CONCLUSION**

Based on the foregoing analysis, the defendants' Motion for Summary Judgment **[Doc. No. 20]** is GRANTED in part and DENIED in part.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of April, 2007.

      /s/ Janet C. Hall
     Janet C. Hall
     United States District Judge